**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DAVID ROSS,**

                                           **Petitioner,**

   **v.**                                          **Civil Action No.**
                                                **9:09-CV-595 (GLS)**

**DALE ARTUS,**
**Superintendent, Clinton Corr. Fac.,**

                                           **Respondent.**

_____

**APPEARANCES:**                      **OF COUNSEL:**

**DAVID ROSS, 04-A-4735**
  Petitioner _pro se_
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York  12929


**HON. ERIC T. SCHNEIDERMAN**      **LEA L. LA FERLITA, ESQ.**
Office of the Attorney General        Assistant Attorney General
State of New York
120 Broadway
New York, New York  10271

**GARY L. SHARPE**
**District Court Judge**


## DECISION AND ORDER

        Petitioner David Ross is a New York State prison inmate as a result

of a 2004 judgment of conviction in Albany County Court of first degree

rape (N.Y. PENAL LAW § 130.35 (1)) and second degree unlawful

imprisonment (N.Y. PENAL LAW § 135.05).  He seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) the

prosecutor failed to disclose exculpatory evidence; (2) the prosecutor

committed misconduct; (3) the trial court erred by refusing to permit

Petitioner to admit into evidence a plea colloquy and pre-sentence report

of a co-defendant; and (4) trial counsel was ineffective.  Dkt. No. 1 at 5-

10.[1]  Respondent has filed an answer, memorandum of law and the

relevant state court records, and Petitioner filed a Traverse.  Dkt. Nos.

11-12, 19.[2]  For the reasons that follow, the petition is denied and

dismissed.

## I.    Background

The Supreme Court of New York, Appellate Division, Third

Department, briefly summarized the facts of this case:

> On October 20, 2002, at approximately 3:00 a.m., the victim went to
> the Willow Inn in the City of Albany, where she saw defendant,
> whom she recognized as the brother of her deceased husband's
> best friend.  According to the victim, after drinking and talking with
> defendant for a short time, the bar prepared to close and defendant
> asked her to go to a party with him.  She agreed and, as they left,
> they were joined by Richard Johnson and Neal Valentine, who were
> not known by the victim.  Defendant, however, told her that

---

[1]     All citations to the petition and other electronically filed documents are to the
page numbers automatically assigned by the district court's Civil Management Electronic
Case Filing (CM/ECF) system.

[2]     The state court records were filed under seal in this case to protect the
identity of the victim, who will be referred to as "the victim."  *See* Dkt. No. 6.

> Johnson was his friend and they would be riding in his van. Johnson then drove the group to Valentine's apartment. Upon entering, the victim became very apprehensive and asked to leave because the apartment was nearly empty. Defendant, however, put her in a room where he told her to stay and left for a very short time. After he returned, Johnson brought in a mattress and left. Although she tried to leave, defendant pushed her down on the mattress and raped her. She then heard defendant and Valentine argue over payment for use of the room, after which defendant left. Johnson then entered the room and raped and sodomized her. When Valentine attempted to sodomize her, she escaped and contacted the police.

*People v. Ross,* 43 A.D.3d 567, 567-68 (3d Dep't. 2007). *See* Transcript of Trial of David Ross (Trial Tr.) at 315-70. The Appellate Division also noted Petitioner's "version of what occurred and his defense:"

> According to defendant, after he and the victim left with Johnson and Valentine, they stopped at several motels to rent a room but, because of the late hour, no one at the motels would answer the buzzer. After buying more beer, they went to Valentine's apartment where he and the victim had consensual sex and the victim accused him of rape in retaliation for leaving her where Johnson and Valentine could rape and sodomize her. Johnson entered a plea of guilty to rape. In his presentence investigation report, he is reported to have made statements corroborative of defendant's version and contradictory to the victim's.

*Id.* at 568. Petitioner was sentenced to serve 17 ½ years in prison followed by five years of postrelease supervision for his conviction for first degree rape, and concurrent term of one year in prison for his conviction for second degree unlawful imprisonment. Sentencing Transcript of

3

David Ross (Sent. Tr.), at 15-18.

Petitioner appealed his conviction, arguing that (1) the prosecutor committed *Brady*[3] violations by failing to disclose co-defendant Richard Johnson's pre-sentence investigation report (PSIR), and by failing to correct jail informant Kevin Allen's testimony that he did not receive consideration for cooperating with the prosecution; (2) the trial court abused its discretion when it refused to permit Johnson's plea allocution to be admitted into evidence; (3) trial counsel was ineffective; (4) the unlawful imprisonment charge should have merged with the rape charge; and (5) the sentence was harsh and excessive. *See* Ex. A at 33-59. On August 9, 2007, the Appellate Division affirmed. *Ross,* 43 A.D.3d at 567-71. The New York Court of Appeals denied leave to appeal on October 19, 2007. *People v. Ross,* 9 N.Y.3d 964 (2007).

Petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10, dated December 22, 2008, in which he argued that trial counsel was ineffective and that the prosecutor engaged in misconduct. *See* Ex. F, Affidavit in Support of Motion to Vacate Judgment Pursuant to New York Criminal Procedure

---

[3]     *Brady v. Maryland*, 373 U.S. 83 (1963).

4

Law Section 440.10 (Section 440 Affidavit), at 6-21; Defendant's Memorandum of Law in Support of Motion to Vacate Judgment of Conviction Pursuant to New York Criminal Procedure Law Section 440.10 (Section 440 Mem.), at 6-26. Petitioner also appeared to argue that the trial court erred when it failed to grant Petitioner's motion for a missing witness charge, and that his statements to police were obtained in violation of his constitutional rights. *See* Section 440 Affidavit at 9, 19.

The People opposed the motion, and Petitioner filed a reply. *See* Exs. G-H. On March 3, 2009, the Albany County Court denied the motion. *See* Ex. I. On May 8, 2009, the Appellate Division denied leave to appeal. Exs. J, K.

This action followed.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011)(citing 28 U.S.C. §§2254[d][1], [2]); *Premo v. Moore,* 131 S. Ct. 733, 739 (2011); *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011)*(per curiam)*(quoting *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010))(internal quotation marks omitted). Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with " 'clear and convincing evidence.' " *Schriro,* 550 U.S. at 473-74 (quoting § 2254[e][1]). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Id.* at 473.

## B. *Brady* violations

Petitioner alleges in Ground One of the petition that the prosecutor

6

withheld exculpatory information in violation of *Brady v. Maryland*, 373

U.S. 83 (1963).  Specifically, Petitioner argues: (1) the prosecutor failed

to timely disclose Johnson's PSIR, which contained information that

supported Petitioner's version of events and contradicted the victim; (2)

the prosecutor failed to timely disclose the name of a witness, Kevin

Allen, preventing Petitioner from adequately investigating Allen; and (3)

the prosecutor failed to timely disclose Allen's plea transcript, which

prevented adequate cross-examination regarding whether Allen received

a benefit in exchange for his testimony.  *See* Dkt. No. 1 at 5; Dkt. No. 19

at 3-4.  Petitioner further argues that the prosecutor knowingly suborned

perjury from Allen by eliciting from him that he was not given any benefit

in exchange for his testimony.  *Id.*

### 1. Johnson's PSIR

Petitioner's claim that the prosecutor failed to timely disclose

Johnson's PSIR is procedurally defaulted.  A federal court may not review

a question of federal law decided by a state court if the state court's

decision rested on a substantive or procedural state law ground that is

"independent of the federal question and adequate to support the

judgment."  *Walker v. Martin,* 131 S. Ct. 1120, 1127 (2011)(quoting

7

*Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).  A state court rule is adequate if it is "firmly established and regularly followed."  *Walker*, 131 S. Ct. at 1127 (quoting *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009)(internal quotation marks omitted).

Here, Petitioner raised his claim regarding Johnson's PSIR on direct appeal.  Ex. A at 36-41.  The Appellate Division found that the claim was unpreserved for appellate review because although Petitioner untimely received a copy of Johnson's PSIR, "he registered no objection." *Ross*, 43 A.D.3d at 569.  The court cited to CPL § 470.05 (2), which provides that a question of law is presented when "a protest thereto was registered, by the party claiming error, at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same."  The Second Circuit has determined that CPL § 470.05 (2) is an independent and adequate state procedural ground that bars federal habeas review.  *See Garvey v. Duncan,* 485 F.3d 709, 720 (2d Cir. 2007); *Garcia v. Lewis*, 188 F.3d 71, 79-82 (2d Cir. 1999). Accordingly, this court's review of Petitioner's claim is procedurally barred.  *Garvey*, 485 F.3d at 720.  That is true even though the Appellate Division also rejected Petitioner's claim on the merits.  *Ross*, 43 A.D.3d at

569 (concluding that if the court did "reach the merits" of this claim, it "would find no reversible error.").[4]  *See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision)(emphasis in original).

Petitioner's procedurally defaulted claim may only be reviewed if he demonstrates (1) good cause for the default and actual resulting prejudice; or (2) that the denial of habeas relief would result in a "fundamental miscarriage of justice," *i.e.*, that he is actually innocent. *House v. Bell,* 547 U.S. 518, 536-39 (2006); *Schulp v. Delo,* 513 U.S. 298, 327 (1995); *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).  To establish cause, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural

---

[4]        The Appellate Division explained that:

> While Johnson's statements in the presentence investigation report impact the credibility of the victim and suggest, at least inferentially, that the victim left the Willow Inn with defendant for the express purpose of having consensual sex, when defendant called Johnson to testify, Johnson invoked his Fifth Amendment right, leaving defendant unable to introduce Johnson's exculpatory statements into the record for the jury's consideration.  Accordingly, we conclude that no violation of *Brady* occurred in this regard.

*Ross*, 43 A.D.3d at 569.

rule. *Coleman,* 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Murray*, 477 U.S. at 496 (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner argues that trial counsel was ineffective for failing to object to the late disclosure of Johnson's PSIR, or to move for a mistrial on that ground. *See* Dkt. No. 1 at 9; Dkt. No.19 at 3-4. The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). As discussed elsewhere in this Decision and Order, Petitioner's claim that trial counsel was ineffective on this ground is without merit, and therefore, it may not serve as "cause" for his procedural default. *Aparicio*, 269 F.3d at 91-92. Since Petitioner has failed to show cause for the procedural

default, the court need not decide whether he suffered actual prejudice. *See Murray*, 477 U.S. at 496; *Stepney,* 760 F.2d at 45.

Finally, Petitioner has not produced any new evidence that he is actually innocent and there is no basis to conclude that the failure to consider the merits of this claim would result in a fundamental miscarriage of justice.  *House,* 547 U.S. at 536-39; *Schulp,* 513 U.S. at 327.  Accordingly, habeas review of Petitioner's claim related to Johnson's PSIR is barred by an adequate and independent state ground, and is dismissed**.**

### 2.  Claims regarding Allen's identity and plea transcript

Petitioner next claims that the prosecutor violated *Brady* by failing to timely disclose Allen's identity and Allen's plea transcript, preventing Petitioner from adequately cross-examining Allen regarding whether he received a reduced sentence based upon his cooperation.  *See* Dkt. No. 1 at 5.  Respondent argues that these claims are unexhausted because they were never presented to any state court, and that these claims are without merit.  *See* Dkt. No. 12 at 25.

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless

"there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1981)); *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000). The requirement that the state courts be given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard*, 404 U.S. at 278. Finally, the petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of the petitioner's claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir.

1985).

Petitioner's claim regarding Allen's plea transcript is unexhausted because it was not raised either on direct appeal or in Petitioner's section 440.10 motion.  *See* Exs. A, F.  This claim is also procedurally defaulted because there is no remaining avenue by which Petitioner could exhaust it.  He cannot now file a direct appeal in order to exhaust them because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *Aparicio,* 269 F.3d at 91.  The facts that would support this claim were apparent on the trial record (*see* Trial Tr. at 8-10, 271-80, 479-84), and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."  *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas."), *cert. denied* 129 S. Ct. 130 (2008); *Sweet,* 353 F.3d at 140-41 (applying section 440.10 (2)(c) to claims raised for the first time in federal habeas petition).

Any section 440 motion filed by Petitioner would also be met by

CPL §440.10 (3)(c), which provides that a court may deny a motion if the defendant filed a previous motion to vacate his conviction and was in a position to raise the claim but did not.  *See Murden v. Artuz*, 497 F.3d 178, 192-94 (2d Cir. 2007) (holding that CPL § 440.10(3)(c) was an adequate state ground to serve as a procedural bar to federal habeas review of the merits of an ineffective assistance of counsel claim), *cert. denied* 552 U.S. 1150 (2008).

Accordingly, Petitioner's claims regarding Allen's plea transcript are deemed exhausted but procedurally barred absent a showing of cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice.  *House,* 547 U.S. at 536-39; *Schulp,* 513 U.S. at 327.  Petitioner has not alleged or established cause for failing to exhaust this claim in state court, and he has not advanced any new evidence that he is actually innocent.  *See* Dkt. No. 1; Dkt. No. 19.  This claim is procedurally defaulted and dismissed.

Petitioner's claim that the prosecutor untimely disclosed Allen's identity, however, appears to have been properly exhausted.  Petitioner raised this claim in his memorandum of law in support of his section 440

motion, and in his reply to the prosecutor's opposition papers.  *See* Ex. F, Section 440 Memo., at 19; Ex. H, Reply to Respondent's Affirmation in Opposition to Defendant's Motion to Vacate Judgment CPL 440.10, at 9. Although the trial court did not specifically address this claim, the court denied the section 440 motion in its entirety (Ex. I at 5), and the Appellate Division denied leave to appeal.  Exs. J, K.  *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001).  But the state court's decision rejecting this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

To demonstrate a *Brady* violation, Petitioner must show that: (1) the evidence was favorable to the accused; (2) the evidence was suppressed by the prosecutor; and (3) prejudice resulted.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)*; Brady v. Maryland*, 373 U.S. 83 (1963). "[T]here is never a real '*Brady* violation' unless the nondisclosure [of exculpatory evidence] was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Strickler*, 527 U.S. at 281.   A habeas petitioner must satisfy all three elements to prevail on a *Brady* claim.  *Id.* at 281-82; *Hughes v. Phillips*, 457 F. Supp. 2d 343, 359 (S.D.N.Y. 2006) (citing *Leka v.*

*Portuondo*, 257 F.3d 89 (2d Cir. 2001)).

Evidence is favorable to the defense when it is exculpatory (relating to the factual innocence of the defendant) or when it serves to impeach the government's witnesses. *Strickler*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is considered "material" where there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *Bagley*, 473 U.S. at 682). Impeachment evidence may be material where the witness supplied the only evidence that linked a defendant to the crime at issue, or where the witness supplied the only support for an essential element of the crime. *DeChirico v. Walker*, 558 F. Supp. 2d 355, 371-72 (E.D.N.Y. 2008).

Petitioner's claim that the prosecutor committed a *Brady* violation by failing to disclose Allen's identity sooner is without merit. *Brady* does not require that the "prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)("*Brady* is not implicated ... where the only claim is that the State should have revealed that it would present the eyewitness testimony of a particular agent against the defendant at trial."). It is worth

noting that, as the trial court found, the prosecutor complied with CPL §

240.45 when it provided trial counsel with Allen's identity and his prior

statements on the first day of the trial.  *See* Trial Tr. at 7-10, 271-72; 274-

75.

Additionally, due process requires that *Brady* material must be

"disclosed in time for its effective use at trial."  *United States v. Coppa*,

267 F.3d 132, 142 (2d Cir. 2001); *see Leka v. Portuondo*, 257 F.3d 89,

100 (2d Cir. 2001)("It is not feasible or desirable to specify the extent or

timing of [the] disclosure *Brady* and its progeny require, except in terms

of the sufficiency, under the circumstances, of the defense's opportunity

to use the evidence when disclosure is made.").  Here, even assuming

Allen's identity was *Brady* material, Petitioner cannot show that his

identity was "suppressed" by the prosecutor because she disclosed his

name, along with his statement, handwritten notes and Allen's criminal

history, prior to jury selection and in time for counsel to make sufficient

use of this information at trial.  *See* Trial Tr. at 7-10, 271-72; 495-512; *see*

*Coppa*, 267 F.3d at 144 ("we reiterate the longstanding constitutional

principle that as long as a defendant possesses *Brady* evidence in time

for its effective use, the government has not deprived the defendant of

17

due process of law simply because it did not produce the evidence

sooner.").  In sum, the state court's rejection of this claim was not

contrary to or an unreasonable application of *Brady*, and this portion of

Ground Two of the petition is denied and dismissed.

### 3.  Claim that the prosecutor suborned perjury

Petitioner next claims that the prosecutor suborned perjury by

eliciting testimony from Allen that he was not given any consideration in

exchange for his testimony against Petitioner.  Dkt. No. 1 at 5.

When the government enters into a cooperation agreement with

one of its witnesses, the prosecutor must disclose the agreement to the

defense and may not knowingly solicit false trial testimony about the deal

or allow false testimony to go uncorrected if it appears.  *United States v.*

*Agurs*, 427 U.S. 97, 103-04 (1976); *Giglio v. United States*, 405 U.S. 150,

154-55 (1972); *Jenkins v. Artuz*, 294 F.3d 284, 292-93 (2d Cir. 2002);

*People v. Sibadan*, 240 A.D.2d 30, 34 (1st Dept. 1998), *lv. denied*, 92

N.Y.2d 861 (1998).

Here, Allen testified that on March 22, 2004, he pleaded guilty to

second degree robbery in exchange for a promised sentence not to

exceed ten years, and that he pleaded guilty to fifth degree criminal

possession of a controlled substance in exchange for a promised sentence not to exceed two to four years.  Trial Tr. at 587-489; 498-502. Allen testified that although these sentences were supposed to run consecutively, he hoped that they would run concurrently.  *Id.* at 488.  At the time of Petitioner's trial, Allen had not yet been sentenced.  *Id.* at 505.

On cross-examination, Allen stated that his testimony had nothing to do with his plea agreement, insisting that he accepted the plea offer "long before [he] talked to anybody about these conversations [he] had with [Petitioner]."  Trial Tr. at 505.  Allen testified that he did not remember the trial judge (Judge Breslin) telling him that he would give him "full consideration for any cooperation" on any other cases, but further testified that if that information was contained in the plea transcript, "then obviously that's what it says, but I don't recall him saying anything like that to me."  *Id.* at 506.  Allen also testified that the day of his plea, he spoke to an investigator from the District Attorney's Office regarding his conversation with Petitioner.  *Id.* at 510-11.  Allen stated that his attorney told him that no one at the District Attorney's Office would speak with him regarding his conversation with Petitioner until after he entered his plea, because no one would make promises to him.  *Id.* at

511.

On re-direct examination, Allen again insisted that his plea offer

was conveyed before he spoke to anyone from the District Attorney's

Office, and that he was "promised nothing" in exchange for his testimony

Trial Tr. at 513.  He stated he agreed to testify because he had a

daughter and sisters, and did not want them "walking the streets with

somebody who sits there and tells me that they held someone woman

[sic] down and raped her."  *Id.* at 512.

Petitioner argued on direct appeal that the prosecutor engaged in

misconduct when she permitted Allen to testify that he received no

benefit in exchange for his testimony.  Ex. A at 41-46.   The Appellate

Division rejected this claim.  *Ross*, 43 A.D.3d at 569.[5]  After

acknowledging that a prosecutor must disclose the existence of any

agreements made with a witness to induce that witness's testimony, and

that a prosecutor must correct misstatements made by the witness

regarding consideration given in exchange for his or her testimony, the

Appellate Division ruled that:

---

[5]        Petitioner also raised this claim in his later filed section 440 motion.  *See* Ex.
F at 10, 15-16.  The trial court rejected it pursuant to CPL § 440.10(2)(a), because the claim
was adjudicated on the merits on direct appeal. Ex. F at 5.

> Recognizing the potential *Brady* violation, Supreme Court commendably obtained a stipulation from counsel that the entire plea allocution of the cellmate be admitted into evidence and that defense counsel read portions of it to the jury. This action, coupled with counsel's closing arguments addressing this issue, resulted in fully disclosing the promise of leniency in exchange for the testimony. The jury, therefore, was able to judge the credibility of this witness and all possible prejudice to defendant was eliminated.

*Id.* That decision, entitled to AEDPA deference, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Petitioner has not established that Allen's trial testimony was intentionally false, or that the prosecutor knowingly solicited false trial testimony, or permitted false testimony to go uncorrected. *Agurs*, 427 U.S. at 103-04; *Giglio*, 405 U.S. at 154-55. Allen's testimony establishes that he did not remember Judge Breslin's comments regarding any consideration he may have received in exchange for his testimony. *See* Trial Tr. at 505-06. Allen did not dispute the accuracy of the plea transcript, and testified that if this information was in the transcript, "then obviously that's what it says [.]" *Id.* at 506.

Moreover, as the Appellate Division found, even if there was a potential *Brady* violation, the trial court took appropriate steps to ensure

that the jury was able to judge Allen's credibility.  *Ross*, 43 A.D.3d at 569.

The trial court expressed concern regarding Judge Breslin's statement to

Allen during Allen's plea colloquy that he would take into account Allen's

testimony during Petitioner's trial.  Trial Tr. at 567.  The trial court pointed

out that Allen "denied that he had some hope of receiving a benefit" and

that he "compounded that problem" when he testified on re-direct

examination that the reason he testified was because "he has a 19 year-

old daughter."  *Id.* at 567-68.  The prosecutor explained that Allen

testified that although no promises had been made to him, he hoped his

sentences on the robbery and drug possession charges would run

concurrently, rather than consecutively.  *Id.* at 568.  The trial court then

stated that Allen testified he could not remember what Judge Breslin told

him, and asked counsel why he did not show Allen his plea transcript. *Id.*

at 569.  Counsel replied, "I thought I made the point."  *Id.*

When trial counsel moved to admit Allen's plea transcript into

evidence, the prosecutor stipulated to admitting the relevant portions

dealing with the plea agreement and Judge Breslin's comments that he

would "give full consideration to any and all cooperation that would be

provided on an unrelated case, which has been conferred about."  Trial

Tr. at 576-77; 585-89.  Counsel read Allen's plea transcript into evidence and pointed out the inconsistencies between Allen's testimony and his plea transcript, and re-read portions of Allen's plea transcript to the jury. *Id.* at 581-89; 714-17. 714-17.  The trial court instructed the jury that it "heard that [Allen] may receive an advantage or benefit as a result of his testimony upon this trial," summarized Allen's testimony, and instructed the jury that it should "carefully scrutinize" his testimony to determine whether he testified truthfully.  *Id.* at 776-77.

Under these circumstances, the jury had the opportunity to evaluate the truthfulness of Allen's testimony in light of any benefit he may have received, and apparently resolved any inconsistencies in favor of the state.  *See, e.g., Rosario v. Smith*, No. 07 Civ. 3611, 2009 WL 1787715, at *14 (S.D.N.Y. Jun. 23, 2009)(finding no prejudice resulting from prosecutor's late disclosure of statements that impeached the credibility of a witness where "the jury was fairly presented with reasons to question [the witness's] credibility . . . as well as his motivation for testifying."). Based upon the record, the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  This claim is denied and dismissed.

## C. Prosecutor misconduct

Petitioner argues in Ground Two of his petition that the prosecutor engaged in misconduct by (1) threatening Johnson with a harsher sentence if he testified; (2) mischaracterizing Johnson's reasons for exercising his Fifth Amendment privilege; and (3) objecting to the admission into evidence of Johnson's plea transcript.  Dkt. No. 1 at 6; Dkt. No. 19 at 6-7.

The standard of review of a prosecutor misconduct claim on habeas review is "a narrow one of due process, and not the broad exercise of supervisory power."  *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  Prosecutor misconduct will warrant reversal only if the prosecutor engaged in " 'egregious misconduct ... amount[ing] to a denial of constitutional due process.' "  *Floyd*, 907 F.2d at 353  (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 [1974]); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 455-56 (S.D.N.Y. 2008)("The acts in question must be egregious enough to amount to a denial of constitutional due process, rendering the trial 'fundamentally unfair.' ")(quoting *Floyd*, 907 F.2d at 353). Petitioner has not met this burden.

At trial, the prosecutor informed the court that as part of Johnson's plea agreement, he had to cooperate "honestly and truthfully and consistently with what his plea allocution was at the time that he gave the plea" and that if he did not, the trial judge that accepted the plea (Judge Herrick) would not be bound by the sentencing agreement. Trial Tr. at 474. The prosecutor then explained that Johnson's statements in his PSIR were "very contrary to what he stated on the record in open court under oath before Judge Herrick." *Id.* The trial court in Petitioner's case suggested that Johnson might have a Fifth Amendment issue if he testified, "even if his narrative in the probation report was totally consistent," and that "if he's not sentenced yet, his Fifth Amendment rights probably still exist." *Id.* at 474-75.

Later in the proceedings, the prosecutor rested her case in chief without calling Johnson to testify. Trial Tr. at 555. Defense counsel asked for a missing witness charge, and the prosecutor opposed because Johnson "is now in the precarious position, given that he has told the probation officer information specifically in violation of his plea agreement, that he could potentially face up to 25 years in prison." *Id.* at 560. The court reserved decision on the request for a missing witness

charge.  *Id.* at 562-63.

Defense counsel then attempted to call Johnson to testify.  Trial Tr. at 571.  He appeared in court with his attorney, who informed the court that if Johnson was called as a witness, "he would exercise his rights under the Fifth Amendment" and would not "answer any questions."  *Id.* at 572.  Johnson confirmed his decision.  *Id.* at 572-73.  The court ruled that Johnson should not be permitted to testify.  *Id.* at 573.

Petitioner argued in his section 440 motion that the prosecutor engaged in misconduct by intentionally delaying Johnson's sentencing and threatening Johnson with a harsher sentence if he testified at trial, and by mischaracterizing Johnson's reasons for invoking the Fifth Amendment privilege.  Ex. F at 13-15, 18-19.  The trial court rejected these claims, finding that his "contentions that the prosecutor engaged in misconduct by intentionally delaying co-defendant Johnson's . . . sentencing proceedings until after the defendant was convicted and thereby preventing co-defendant Johnson from testifying at trial" was "patently meritless."  Exhibit I at 4.  The court explained that prosecutors "almost always delay the sentencing of co-defendants and cooperating witnesses until after a trial, and the prosecutor does not control whether a

co-defendant will or will not assert his Fifth Amendment privilege." *Id.*
The court also rejected Petitioner's claim that the prosecutor engaged in
misconduct by objecting to the admission of Johnson's plea transcript at
trial. *Id.* at 4.  That decision was not contrary to or an unreasonable
application of clearly established Supreme Court precedent.

Nothing in this record supports Petitioner's argument that the
prosecutor threatened Johnson or misled the trial court.  To the contrary,
Johnson's own actions appear to have placed his plea agreement,
including his promised sentence, in jeopardy.  Trial Tr. at 474-75, 560-63.
Accordingly, Petitioner has failed to show that the prosecutor engaged in
misconduct, much less that he was denied due process as a result of the
prosecutor's exchanges with the trial court regarding Johnson's testimony
and the exercise of his Fifth Amendment privilege. *Donnelly,* 416 U.S. at
647-48; *Floyd*, 907 F.2d at 353; *Ortiz,* 558 F. Supp. 2d at 455-56.

The same is true of Petitioner's claim that the prosecutor engaged
in misconduct by objecting to the admission at trial of Johnson's plea
allocution.  As the trial court found, it was not misconduct to object to the
admission of evidence based upon the legal theory that it constituted
hearsay. *See* Ex. I at 4; Ross, 43 A.D.3d at 569-70.  Petitioner has failed

to show that the prosecutor engaged in misconduct by raising an objection to the admission of the plea transcript, or that he was denied due process as a result.  *Donnelly*, 416 U.S. at 647-48; *Floyd*, 907 F.2d at 353.

In sum, the state court's denial of Petitioner's prosecutor misconduct claims was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and this claim is dismissed.

### D.  Evidentiary errors

Petitioner argues in Ground Three of his petition that the trial court erred by refusing to admit Johnson's PSIR and plea transcript into evidence because they constituted exculpatory declarations against Johnson's penal interest.  *See* Dkt. No. 1 at 7.[6]

There is no basis in the record for Petitioner's claim that the trial

---

[6]     Petitioner also argues, as he did in his memorandum of law in support of his section 440 motion, that these documents qualified either as business records or public documents.  *See* Dkt. No. 1 at 7; Ex. F, Section 440 Mem. at 13.  Trial counsel did not make this particular argument in the trial court.  *See* Trial Tr. at 577-80.  In any event, the trial court properly rejected this section 440 claim.  Petitioner cites no authority, and this court has found none, that supports his argument that Johnson's plea transcript and the statements made in his PSIR constitute business records under New York law.  *See* N.Y.C.P.L.R. § 4518; *State v. Dove*, 18 Misc. 3d 254, 258 (Bronx Co. 2007)("Although the pre-sentencing report and parole reports themselves may qualify as business records institutionally kept by the State of New York, the statements contained therein by the victims do not fall within that business record exception.").

court erroneously excluded Johnson's PSIR, because Petitioner did not seek its admission at trial. *See* Trial Tr. at 577-80. This portion of Petitioner's claim is therefore denied and dismissed. Petitioner's claim that counsel was ineffective for failing to seek its admission into evidence (Dkt. No. 1 at 9) is addressed elsewhere in this Decision and Order.

Respondent argues that Petitioner's claim regarding Johnson's plea transcript is unexhausted and procedurally defaulted because it was not fairly presented to the New York courts in federal constitutional terms. *See* Dkt. No. 12 at 26, 43. This Court disagrees.

As previously noted, the AEDPA requires petitioners to "fairly present" each claim to the highest state court capable of reviewing it prior to seeking a federal writ of habeas corpus. *Baldwin*, 541 U.S. at 29. To establish that a federal claim has been "fairly presented" to the state courts, a petitioner must (1) have relied on federal case law employing federal constitutional analysis; (2) relied on factually similar state cases employing federal constitutional analysis; (3) asserted the claim "in terms so particular as to call to mind a specific right protected by the Constitution;" or (4) alleged a set of facts well within ordinary constitutional litigation." *Stone v. Stinson*, 121 F. Supp. 2d 226, 236

29

(W.D.N.Y. 2000)(citing *Daye v. Atty. Gen, New York*, 696 F.2d 186, 189-90 (2d Cir. 1982)).

Here, Petitioner challenged the trial court's decision to exclude Johnson's plea transcript on direct appeal, arguing that it qualified as a statement against Johnson's penal interest that was exculpatory to Petitioner. *See* Ex. A at 46-50. Petitioner did not cite to federal case law, or to the federal constitution, in his brief. He did, however, cite to *People v. Darrisaw*, 206 A.D.2d 661, 664 (3d Dep't 1994), a case in which the court cited to *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973), for the proposition that if a witness's statement against penal interest is exculpatory as to a defendant, and forms a "critical part of the defense, due process concerns may tip the scales in favor of admission." *Darisaw*, 206 A.D.2d at 664. The Appellate Division in this case also cited to *Darisaw*. *See Ross*, 43 A.D.3d at 569-70. Since the Appellate Division had the opportunity to consider the federal constitutional nature of this claim, it is exhausted. The state court's rejection of this claim, however, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

State court rulings on evidentiary matters, even if the rulings were

30

erroneous under state law, constitute state law issues and do not rise to the level of a constitutional violation unless the error "was so pervasive as to have denied [the petitioner] a fundamentally fair trial[.]." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)(It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Linton v. Bradt*, No. 10 Civ. 4581, 2011 WL 1252752, at *2 (E.D.N.Y. Apr. 4, 2011)("We ... acknowledge ... our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.")(citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)).  A petitioner must show that the evidentiary ruling was erroneous under New York law, and that the erroneous ruling "had a substantial and injurious effect" of the verdict.  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993)).

Trial courts have wide discretion when deciding whether to admit or exclude evidence, but they "may not arbitrarily and irrationally apply evidentiary rules in a mechanical fashion to exclude material, reliable, exculpatory evidence."  *Persad v. Conway,* No. 05-CV-4199, 2008 WL 268812, at *17 (E.D.N.Y. Jan. 30, 2008)(quoting *Morales v. Smith*, No.

05-CV-1104, 2005 WL 2367621, at *6 (E.D.N.Y. Sept. 27, 2005)); *see*

*Chambers*, 410 U.S. at 302 ("where constitutional rights directly affecting

the ascertainment of guilt are implicated, the hearsay rule may not be

applied mechanistically to defeat the ends of justice."); *Hawkins v.*

*Costello*, 460 F.3d 238, 243 (2d Cir. 2006) (stating that the Supreme

Court "has found unconstitutional the rigid application of state evidentiary

rules prohibiting presentation" of exculpatory evidence)(quoting *Wade v.*

*Mantello*, 333 F.3d 51, 57 (2d Cir. 2003)).

The Second Circuit has established a two-step process for

determining whether the exclusion of evidence violates a petitioner's right

to present a defense.  Courts must first  "start with the 'propriety of the

trial court's evidentiary ruling.' " *Hawkins,* 460 F.3d at 244 (quoting *Wade,*

333 F.3d 51, 59 (2d Cir. 2003)).  If the state court's evidentiary ruling was

correct, habeas review is limited to whether the evidentiary rule is "

'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.' "

*Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting

*Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).  To meet this standard, the

evidentiary rule must have infringed on a "weighty interest" of the

petitioner.  *Id.*

If exculpatory evidence was erroneously excluded, the court must then determine if the error deprived the petitioner of a fundamentally fair trial.  The test for fundamental fairness is "whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.' "  *Hawkins,* 460 F.3d 244 (quoting *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996)(quoting *Agurs*, 427 U.S. at 112).

"New York recognizes an exception for hearsay statements that are against a declarant's penal interest, provided a proponent satisfies four criteria."  *Rodriguez v. Artuz*, 123 Fed. Appx. 428, 430 (2d Cir. 2005) (citing *People v. Settles*, 46 N.Y.2d 154, 167(1978)).  The declarant must (1) be unavailable; (2) be aware at the time he made statement that "it was adverse to his penal interest;" (3) have competent knowledge of the facts underlying his statement; and (4) there must be "supporting circumstances independent of the statement itself ... to attest to its trustworthiness and reliability."  *Settles*, 46 N.Y.2d at 167.  Petitioner does not argue that these criteria are arbitrary or disproportionate to New York's legitimate interest in excluding unreliable hearsay from a jury's consideration.  Instead, he argues that the trial court erroneously excluded Johnson's plea transcript.

33

The trial court denied counsel's request that Johnson's plea transcript be admitted into evidence because, although the portion of the plea transcript where Johnson admitted his own guilt was against Johnson's penal interest, any statements he made regarding Petitioner's actions were not.  Trial Tr. at 579.  On appeal, the Appellate Division found that the trial court properly excluded the transcript because Petitioner "failed to detail with any specificity what was contained in Johnson's plea allocution and its relevance to [his] defense but, instead, merely argued that it should not be considered hearsay."  *Ross*, 43 A.D.3d at 569-70.  *See Hawkins*, 460 F.3d at 246 ("when the trial court made its initial exclusion ruling, the proverbial ball was in Hawkins's court. As a matter of New York law, it was incumbent upon his counsel to alert the trial court to a basis, if there was any, upon which the out-of-court statements were admissible. He did not do so.")(internal citation omitted).

The Appellate Division further found this claim was without merit. The court explained that Johnson was unavailable, knew at the time of his plea that his statements made during his plea allocution were against his penal interest, and had competent knowledge of the facts.  *Ross*, 43 A.D.3d at 570 (citing *Darisaw*, 206 A.D.2d at 663-64)(other citation

omitted).  The court concluded, however, that "nothing in this record demonstrates that any portion of Johnson's plea allocution is trustworthy and reliable insofar as exculpatory evidence helpful to [Petitioner] is concerned."  *Id.* at 570.

That ruling is supported by the record, which indicates that Johnson's statements during his plea allocution were of questionable reliability because he recanted his admissions and made contrary statements to a probation officer.  Trial Tr. at 577-80; Ex. A at 37. Johnson's plea transcript was properly excluded under New York law, and the state court's application of the hearsay rule was not arbitrary or disproportionate to its legitimate purpose.  *Rock,* 483 U.S. at 56; *see People v. Ennis*, 11 N.Y.3d 403, 412 (2008) ("The requirement that the statement be contrary to the declarant's penal interest, however, poses a problem since the part of the statement that defendant would have sought to admit - that defendant was not present at the time of the shooting - is not directly inculpatory of [the witness]")(citing *People v. Brensic*, 70 NY2d 9, 16 (1987)(courts "admit only the portion of (the) statement which is opposed to the declarant's interest since the guarantee of reliability contained in declarations against penal interest exists only to the extent

the statement is disserving to the declarant")(citations omitted), *cert. denied* 129 S. Ct. 2383 (2009).

Even assuming the transcript should have been admitted, it would not have created a reasonable doubt that did not otherwise exist because, at most, Johnson's statements would have corroborated Petitioner's testimony. Therefore, the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and it is denied and dismissed. *Agurs,* 427 U.S. at 112-13; *Chambers,* 410 U.S. at 298; *Hawkins,* 460 F.3d 244.

### E.  Ineffective assistance of trial counsel

Petitioner argues in Ground Four of his petition, as he did on direct appeal and in his section 440 motion, that trial counsel was ineffective. *See* Dkt. No. 1 at 8-13; Ex. F at 7, 12-19; Dkt. No. 19 at 7-8.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Premo*, 131 S. Ct. at 739; *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  A petitioner must

overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 [1955]).  Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice.  *See id.* at 693-94.

Meeting this burden is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Premo*, 131 S. Ct. at 739-40 (citations and internal quotation marks omitted).  Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen  § 2254(d) applies, the question is not whether counsel's actions were reasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  Rather, "the question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard."  *Id.*  Finally, when assessing prejudice, habeas courts "must consider the totality of the evidence before the judge or jury."  *Berghuis v. Thompkins,* 130 S. Ct. 2250, 2264 (2010)(quoting *Strickland*, 466 U.S. at 695).  Analyzed under these standards,

37

Petitioner's claims fail.

The Appellate Division rejected Petitioner's claim that trial counsel was ineffective on direct appeal, ruling that, "the evidence, the law and the circumstances of this case, viewed in totality, reveal effective representation." *Ross*, 43 A.D.3d at 570.  The court rejected Petitioner's claims that  "his trial counsel was ineffective because he failed to cross-examine any medical witnesses, failed to object to prejudicial testimony of the victim and otherwise failed to make objections and motions." *Ross*, 43 A.D.3d at 570.  Although the Appellate Division ruled that "some minor fault may be found with counsel's performance, meaningful representation does not mean perfect representation." *Id.* The court explained that because Petitioner claimed that he had "consensual sex with the victim who was then raped by Johnson, it was not ineffective to refrain from cross-examining the medical witnesses who testified to physical evidence of intercourse and DNA evidence tying both defendant and Johnson to the victim." *Id.*  The Appellate Division further found that counsel's "failure to object to the victim's testimony concerning Johnson and Valentine was in keeping with this strategy." *Id.*

The record supports the Appellate Division's conclusions.

Counsel's theory of the case, supported by Petitioner's own testimony, was that the victim consented to have sexual intercourse with Petitioner, and that after he left the apartment, Johnson and Valentine raped her. *See* Trial Tr. at 592-99, 707-21.   As the Appellate Division found, that theory was reasonable in light of the physical evidence that linked Petitioner to the victim.  *Id.* at 543-44, 553-54.  Counsel filed appropriate motions, including motions to suppress Petitioner's statements to police, and to preclude the prosecutor from impeaching Petitioner with prior crimes or bad acts.  *See* Transcript of Huntley Hearing, Apr. 1, 2004, at 2-64; Trial Tr. at 3-8.  He vigorously cross-examined the prosecutor's witnesses, and successfully moved Allen's plea transcript into evidence. Trial Tr. at 346-69, 385-90, 408-16, 464-67, 495-512, 584-89.  In sum, the record refutes Petitioner's general, unspecified claim that counsel was unprepared and inept.

The majority of Petitioner's specific challenges to counsel's performance relate to strategic decisions, which are owed special deference.  *Strickland,* 466 U.S. at 690-91 (stating that the strategic choices of trial counsel "are virtually unchallengable" in habeas corpus proceedings).  Counsel was "entitled to formulate a strategy that was

reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Richter*, 131 S. Ct. at 789 (citations omitted). The fact that counsel's strategy was unsuccessful does not mean that he was ineffective. *See Figueroa v. Ricks,* 378 F. Supp. 2d 210, 222 (W.D.N.Y. 2005)("That the challenged strategy was unsuccessful does not provide a basis for concluding that defense counsel's performance was unreasonable.")

Nonetheless, Petitioner claims, as he did on direct appeal, that counsel was ineffective for failing to adequately cross-examine Detective McNally, Robin Gardner and Allen. *See* Dkt. No. 1 at 8. The manner in which counsel conducted cross-examination is a tactical decision and will not be second-guessed by a reviewing court unless there is no strategic justification for counsel's chosen course of action. *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)("Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim.")(quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

Detective McNally testified that he overheard Petitioner tell

Detective O'Neil that he never met the victim and did not have sex with her.  Trial Tr. at 429.  There was no strategic reason to question Detective McNally on that point because Petitioner admitted he made that statement, and that it was untrue, but claimed that he panicked and was married at the time of the incident.  *Id.* at 598-99.

Petitioner's claim that counsel was ineffective because he failed to object to expert testimony presented by Robin Gardner, a nurse who examined the victim, is similarly without merit.  *See* Dkt. No. 1 at 8. Petitioner appears to be arguing, as he did on direct appeal, that Gardner was not offered as an expert witness and was therefore not qualified to testify that the victim suffered vaginal blunt force or trauma, and that counsel did not adequately cross-examine Gardner.  *See id*; Ex. A at 51. As the Appellate Division found, "it was not ineffective to refrain from cross-examining the medical witnesses who testified to physical evidence of intercourse" that tied Petitioner and Johnson to the victim because it conformed to Petitioner's theory of the defense.  *Ross*, 43 A.D.3d at 570; *see* Trial Tr. at 592-98, 618-22; *Richter*, 131 S. Ct. at 789.

Petitioner next argues that counsel failed to effectively cross-examine Allen regarding whether he received any benefit in exchange for

his testimony.  Counsel did, however, question Allen on that point.  *See*

Trial Tr. at 506-12.  Although counsel did not use Allen's plea transcript to

cross-examine him, Allen conceded that the content of the transcript was

accurate, and counsel successfully moved for the admission of the

transcript into evidence, and read it to the jury.  Counsel also argued in

summation that the jury should reject Allen's testimony because although

he testified that he received no benefit in exchange for his testimony, the

plea transcript contradicted him.  *Id.* at 575, 585-89, 714-16.

Petitioner further claims, as he did in his section 440 motion, that

counsel was ineffective for failing to adequately cross-examine and

impeach the victim with unspecified "ample amounts of impeachment

material."  Dkt. No. 1 at 8.[7]  The trial court rejected Petitioner's claims that

counsel failed to adequately cross-examine witnesses pursuant to CPL §

440.10 because those claims were matters of record that could have

---

[7]        Respondent argues that this claim is unexhausted because it has not been
raised in any state court.  *See* Dkt. No. 12 at 25.  After carefully reviewing the record, the
court disagrees.  Petitioner argued in his section 440 motion that counsel failed to
adequately investigate the victim's background, history of drug use, and information
regarding false allegations of rape in the past.  Petitioner claimed that this failure to
investigate resulted in inadequate cross-examination of the victim.  *See* Ex. F. at 8.
Liberally construing the petition, the "ample amounts of impeachment material" could
include the information detailed in Petitioner's 440 motion.  Therefore, this claim appears to
be properly exhausted.

been raised on direct appeal.  *See* Ex. I at 3 (citing CPL § 440.10(2)). [8]

The state court's denial of this claim based upon section 440.10(2)

constitutes an adequate and independent state ground and review of the

claim is barred unless Petitioner shows cause for the default and resulting

prejudice, or that the failure to review this claim will result in a

fundamental miscarriage of justice.  *Calderon*, 523 U.S. at 559; *Clark*, 510

F.3d at 392-93.  Petitioner has not alleged or established cause to excuse

this procedural default, or that failure to review his claim would result in a

fundamental miscarriage of justice.  *House*, 547 U.S. at 536-39; *Murray*,

477 U.S. at 496.  This portion of Petitioner's ineffectiveness claim is

denied and dismissed.

Petitioner next claims that counsel was ineffective for not objecting

to unspecified "damaging portions" of the victim's testimony.  *See* Dkt. No.

1 at 8.  This claim is too vague to warrant habeas relief.  *McBean v.*

---

[8]        Section 440.10(2) sets forth four circumstances in which a trial court "must deny a motion to vacate a judgment:" (a) the ground raised in the motion was previously decided on the merits on appeal unless there has been a retroactive effective change in the law; (b) the judgment under attack is appealable or pending on appeal, and sufficient facts appear on the record to permit adequate appellate review; (c) the defendant unjustifiably failed to raise the claim on direct appeal even though sufficient facts appeared on the record to permit adequate appellate review; and (d) the issue relates solely to the sentence and not the underlying judgment.  Although the trial court did not specify subsection c in its opinion, the court specifically stated that Petitioner's claims regarding cross-examination of witnesses were matters that were or could have been raised on direct appeal.  Ex. I at 3. Since this particular claim regarding cross-examination of the victim was not raised on direct appeal, but could have been, review of this claim by the state court would have been barred pursuant to CPL § 440.10(2)(c).

*Warden*, No. 08-CV-150, 2008 WL 5169549, at *14 (N.D.N.Y. Dec. 9, 2008); *Skeete v. People of the State of New York,* No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003).  To the extent that Petitioner may be alleging, as he did on direct appeal, that counsel failed to object to the victim's testimony that after Petitioner left, Johnson raped and sodomized her and Valentine attempted to sodomize her (Ex. A at 51-52), that claim also fails to show counsel was ineffective.  That testimony was consistent with Petitioner's defense that after he had consensual sex with the victim, he left her in the apartment with Valentine and Johnson and was not present when they assaulted her.  *See* Trial Tr. at 598, 625; *Richter*, 131 S. Ct. at 789.

Petitioner also argues that counsel was ineffective for failing to request further limiting instructions, or move for a mistrial, when Detective O'Neil testified that Petitioner was in custody on an unrelated matter, in direct contradiction to the trial court's instructions.  Dkt. No. 1 at 8.  Although counsel did not request either form of relief after Detective O'Neil's testimony, that decision, too, is a matter of reasonable strategy.  Counsel may have decided not to seek further relief in an effort to avoid calling attention to what he considered to be damaging testimony.  *See*

*Richter*, 131 S.Ct. at 790 ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.' ")(quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)(per curiam)); *Brown v. Graham*, No. 10-CV-6281, 2011 WL 3476526, at *8 (W.D.N.Y. Aug. 9, 2011)(counsel was not ineffective for failing to request a curative instruction after the victim stated that petitioner once had been incarcerated because "counsel legitimately could have wished to avoid highlighting the testimony for the jury with a limiting instruction" and the petitioner failed to "demonstrate that this testimony had any conceivable effect on the jury's verdict, as the evidence of his guilt was overwhelming."); *Clanton v. Rivera*, No. 06 Civ. 4756, 2008 WL 2839712, at *24 (S.D.N.Y. Jul. 22, 2008)("Defense counsel may have reasonably chosen not to object to Det. Carmichael's brief reference to Clanton's criminal history. . . in order to avoid highlighting the fleeting reference."), *adopted by* 2010 WL 1685414, at *1 (S.D.N.Y. Apr. 22, 2010).

Petitioner next claims that counsel was ineffective for failing to request that Johnson's plea transcript and PSIR be admitted into

evidence.  Dkt. No. 1 at 9.  Since counsel argued that Johnson's plea

transcript should be admitted into evidence, that portion of Petitioner's

claim is belied by the record and denied.  Trial Tr. at 577-59.

Petitioner's claim that counsel was ineffective for failing to seek the

admission of Johnson's PSIR statements into evidence,[9] and his related

claim that counsel should have moved for a mistrial based upon late

disclosure of the PSIR, are also without merit.  Johnson's "statements in

the presentence investigation report impact the credibility of the victim

and suggest, at least inferentially, that the victim left the Willow Inn with

[Petitioner] for the express purpose of having consensual sex."  *Ross*, 43

A.D.3d at 569.  But Johnson invoked his Fifth Amendment right and

refused to testify.  *Id.*; *see* Trial Tr. at 571-74.  Therefore, absent an

exception to the hearsay rule, Johnson's statements that may have had

an impact on the victim's credibility, or that may have corroborated

Petitioner's version of events, would not have been admissible.  *Ross*, 43

A.D.3d at 569; *see Barnes v. Burge*, 372 Fed. Appx. 196, 201 (2d Cir.

---

[9]    Respondent argues that Petitioner's claim regarding counsel's failure to move Johnson's PSIR into evidence is unexhausted because it was not presented to any state court.  *See* Dkt. No. 12 at 22. Petitioner did, however, challenge counsel's failure to make Johnson's PSIR part of the record on direct appeal. *See* Ex. A at 53. Liberally construing the record, this claim has been exhausted.

2010)(explaining that out-of-court statements made by a witness introduced at trial for the truth of its content constituted inadmissible hearsay under New York law; and finding that "because the witnesses' evidence ultimately would have been inadmissible, Petitioner can prove no prejudice from counsel's having failed to investigate further [.]").

Petitioner next argues that counsel was ineffective for failing to object to several portions of the prosecutor's summation, including the reference to Valentine's and Johnson's crimes against the victim; the comment that the victim did not "deserve to be raped by Johnson," the comment that the victim's statement was in evidence, and the comment that petitioner admitted he lied to the jury.  Dkt. No. 1 at 9.  If there is no prejudicial error in a prosecutor's summation, "the failure to raise an otherwise futile objection does not render counsel ineffective." *Jones v. Woods*, No. 07-CV-1326, 2009 WL 4906882, at *7-8 (E.D.N.Y. Dec. 18, 2009)(quoting *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005)); *see Cuevas v. Henderson*, 801 F.2d 586, 592 (2d Cir.1986) (concluding that because "[t]he prosecutor's summation was appropriate ... defense counsel's failure to object does not support a conclusion that his

47

performance was not reasonably competent.").

Here, counsel's decision not to object to the prosecutor's comments regarding Johnson and Valentine could reasonably have been related to his defense theory that those two men, and not Petitioner, raped the victim. *See* Trial Tr. at 712-15.   While the prosecutor argued that Petitioner lied to police - a fact Petitioner admitted was true - and that, by extension, he was not telling the jury the truth when he testified, constituted fair comment on the evidence, and fair response to defense counsel's summation. *See* Trial Tr. at 598-99, 708-23; 744-46. *Darden v. Wainwright*, 477 U.S. 168, 182 (1986)("Much of the objectionable content was invited by or was responsive to the opening summation of the defense. As we explained in *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L.Ed.2d 1 (1985), the idea of "invited response" is used not to excuse improper comments, but to determine their effect on the trial as a whole."); *Ogletree v. Graham*, 559 F. Supp. 2d 250, 260 (N.D.N.Y. 2008)("statements during summation are permissible if they constitute a 'fair comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to remarks made by the defense counsel

48

during summation.' ")(quoting *Roman v. Filion*, No. 04 Civ. 8022, 2005 WL 1383167, at *26 (S.D.N.Y. June 10, 2005) (quoting *People v. Perez*, 18 A.D.3d 480 (2d Dep't 2005)).  Finally, counsel did object when the prosecutor commented on the content of victim's statements on the ground that the statement was not in evidence, thus preserving that issue for appellate review.  *See* Trial Tr. at 738.

Based upon the foregoing, Petitioner cannot establish that he suffered any "actual prejudice" as a result of the prosecutor's summation. *See Darden*, 477 U.S. at 181-182 (prosecutor's summation did not render trial fundamentally unfair where prosecutor did not manipulate or misstate the evidence, and comments were in part invited by or responsive to the summation of the defense); *United States v. Coriaty*, 300 F.3d 244, 256 (2d Cir. 2002)(" 'argu[ing] the accuracy of the underlying, albeit contested, facts' is not prejudicial")(quoting *United States v. Zichettello*, 208 F.3d 72, 103 (2d Cir. 2000).

Petitioner also argues that counsel was ineffective for failing to file a motion to set aside the verdict pursuant to CPL § 330.30.  Dkt. No. 1 at 9. At sentencing, however, the trial court stated that Petitioner "is deemed to

49

have made a motion to set aside the verdict based upon errors or defects

in the trial which would require reversal upon appeal by an Appellate

Court." *See* Sent. Tr. at 2-3.  The trial court concluded that there were no

such errors or defects and that any section 330.30 motion should be

denied.  *Id.* at 3.  Under these circumstances, Petitioner has failed to

show that but for counsel's failure to file a section 330.30 motion, the

outcome of the proceedings might have been different.  *Strickland*, 466

U.S. at 693-94.

Petitioner next argues, as he did in his section 440 motion,[10] that

counsel was ineffective for failing to locate, interview and call witnesses at

trial.  Dkt. No. 1 at 10; Ex. F at 7.  Specifically, in his motion, Petitioner

alleged that counsel failed to locate and interview Kathy Czisa, the

bartender at the Willow Bar, and its owner, "Andy;" the chaplain and

corrections officers on Petitioner's cell block; night shift workers at the

motels where Petitioner allegedly looked for a room on the night of the

---

[10]    In his section 440 motion, Petitioner raised several of the same claims of
ineffective assistance that were raised on direct appeal.  *See* Ex. F at 12-19.  The trial court
found that Petitioner's claims regarding counsel's decision not to request a mistrial or
limiting instructions regarding O'Neil's testimony, counsel's lack of familiarity with New York
laws, counsel's failure to file post-verdict motions, and the lack of cross-examination of
witnesses were claims that were, or could have been, raised on direct appeal.  *See* Ex. I at
2-3. The trial court therefore declined to review these claims a second time.  *Id.*

rape; the workers at a restaurant where Petitioner allegedly went on the night of the rape; and co-defendant Valentine.  *See* Ex. I at 2.

The trial court rejected this claim because it was based upon Petitioner's "conclusory and speculative claims regarding the testimony such witnesses <u>would</u> have given at trial and regarding the evidence that <u>would</u> have been uncovered by such investigations."  Ex. I at 3 (emphasis in original).  The court noted that Petitioner failed to support his claim by with affidavits from the purported witnesses regarding their testimony, or any documentary evidence that counsel's alleged failure to investigate failed to uncover.  Ex. I at 3-4.[11]  *See McLean v. Green*, No. 05-CV-5603, 2009 WL 4778824, at *15 (E.D.N.Y. Apr. 15, 2009)("Petitioner's conclusory assertions, absent additional specific support, are insufficient to overcome the strong presumption that counsel acted reasonably."), *adopted by* 2009 WL 4854512, at *1 (S.D.N.Y. Dec. 19, 2009).

---

[11]    Petitioner attached to his Traverse an affidavit from Marilyn Oliver, in which Oliver states that she was employed at the Willow Bar the night of the rape and the bartender told her "what had happened prior to [Petitioner] leaving that night he is being accused of," including that the victim was "all over [Petitioner]", was "rubbing herself on him" and "wanting for him to leave with her."  *See* Dkt. No. 19, attached letter dated Mar. 20, 2009.  There is no indication that this letter was ever presented to any state court, and this court may not consider it.  *See Cullen*, 131 S. Ct. at 1398 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

51

In any event, Petitioner's unsupported claim fails because the decision as to "whether to call specific witnesses - even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation."  *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000); *see Nersesian*, 824 F.2d at 1321 ("[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."); *Thompson v. Artuz,* No. 06-CV-0254, 2011 WL 736060, at *17 (W.D.N.Y. Jan. 4, 2011)("as a matter of federal law, the decision whether to call witnesses constitutes a strategy matter that is generally beyond question."), *adopted by* 2011 WL 720074, at *1 (W.D.N.Y. Feb. 23, 2011).

In sum, the state courts' rejection of Petitioner's claim that trial counsel was ineffective was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  *Richter,* 131 S. Ct. at 791 ("*Strickland* does not guarantee perfect representation, only a reasonably competent attorney. . . . Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney

may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.")(internal citations and quotation marks omitted).  Ground Four of the petition is therefore denied and dismissed.

**WHEREFORE**, after reviewing Petitioner's submissions and the relevant law, and for the reasons stated, it is further

**ORDERED,** that Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED in its entirety;** and it is further

**ORDERED**, that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED,** that the Clerk of the Court shall serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

November 17, 2011

Gary L. Sharpe
U.S. District Judge

53